## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BARRY MORRIS,**

       **Plaintiff,**

**vs.**                                 **Case No. 17−cv−1033−DRH**

**JOHN BALDWIN,**
**ILLINOIS DEPARTMENT OF**
**CORRECTIONS,**
**CHRIS BRADLEY,**
**JACQUELINE LASHBROOK,**
**FRANK LAWRANCE,**
**HOLLY HAWKINS,**
**GAIL WALLS,**
**CINDY MEYER,**
**ROBIN ROWOLD,**
**JOSH MILUER, and**
**WEXFORD HEALTH SOURCES**

       **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Barry Morris, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, The Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). Plaintiff seeks injunctive relief and damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

(a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Amended Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Amended Complaint

Plaintiff originally filed suit in Case No. 17-cv-852-DRH with co-plaintiff Scott Peters. After the Court warned Plaintiff about the difficulties of proceeding

in concert with another inmate, Plaintiff informed the Court that he wished to proceed separately, and these claims were severed into a new action on September 26, 2017. (Doc. 1). Plaintiff was also granted leave to file an amended complaint, which he did on October 4, 2017. (Doc. 11).

The Amended Complaint alleges that Plaintiff is being denied reasonable accommodation under the ADA and the RA. (Doc. 11, p. 3). Plaintiff suffers from a herniated disc and severe spinal stenosis, nerve damage in his right hand/arm, which is also partially paralyzed, benign prostatic hyperplasia (an enlarged prostate), and high blood pressure. (Doc. 11, p. 14). Plaintiff informed the defendants about his disabilities via letters and grievances. (Doc. 11, p. 3). Plaintiff alleges that he was deprived of reasonable accommodations for his disabilities, and access to prison activities and opportunities. (Doc. 11, p. 4). Plaintiff also alleges that the refusal to accommodate his disability puts him at substantial risk of serious harm, and thus, that Defendants are deliberately indifferent. (Doc. 11, pp. 4-5). Menard is not ADA compliant, and is the only facility in the state of Illinois that does not permit assistive-walking devices in general population. (Doc. 11, p. 14).

Specifically, Plaintiff alleges that his disabilities allow him to use crutches, but Menard as an institution does not permit the use of crutches unless an inmate is confined to the health care unit. (Doc. 11, p. 6). Walking with crutches provides Plaintiff with exercise that he is deprived of when confined to a wheelchair. (Doc. 11, p. 17). The health care unit cannot house all the inmates

that need crutches or other walking devices. (Doc. 11, pp. 6-7). Plaintiff was also prohibited from attending night yard, meals in the cafeteria, and mental health therapy. (Doc. 11, p. 7). The commissary is not ADA accessible, and Plaintiff cannot attend because his wheelchair cannot fit. *Id.* Plaintiff must order his commissary items and accept or reject the entire order without substitutions, even if certain items are unavailable. *Id.*

Plaintiff is allowed to attend yard, but once he reaches the yard, his wheelchair is taken from him and he is forced to sit at a table for 3 hours. (Doc. 11, pp. 7-8). Plaintiff has been told to call the tower if he needs to use the restroom or the phone, but the tower has ignored his requests and told him they won't respond to him unless it's an emergency. (Doc. 11, p. 8).

There is no ramp to the personal property building, so if Plaintiff attends, he must carefully negotiate the 8-10 steps. *Id.* Plaintiff needs access to the personal property building because his excess legal boxes are stored there. *Id.*

Plaintiff also cannot participate in programs at the school building because it is located on the second floor. *Id.* The school has an elevator, but Plaintiff is prohibited from using it. *Id.* Menard also has a program where it offers inmates MP3 players with text capabilities, but Plaintiff cannot access the "sinc" machines that make the music and texts available because they are only available at the gym and commissary. *Id.*

Plaintiff also has nerve damage in his right arm/hand. (Doc. 11, p. 9). On October 31, 2016, the medical director gave Plaintiff a medical permit requiring

that prison staff use waist chains when transporting Plaintiff. *Id.* Plaintiff alleges that Defendants disregarded this order and continued to use a box and chain set on Plaintiff, causing more nerve damage to his right arm and hand. *Id.* Wexford has further denied a recommendation to send Plaintiff out to a neurologist to assess the damage. *Id.* Plaintiff alleges he sent an emergency grievance to Lashbrook on August 19, 2017, and that she failed to respond to the grievance. (Doc. 11, pp. 9-10).

Plaintiff alleges that Lashbrook, Miluer, and Meyers inflicted severe emotional distress on Plaintiff when they told him he would be transferred. (Doc. 11, p. 10-11). Allegedly, on June 6, 2017, Miluer stopped Plaintiff and told him that he had talked with the Warden and they agreed to transfer Plaintiff out of Menard if he stopped writing grievances. (Doc. 11, p. 11). Plaintiff wrote several letters to Miluer in June and July 2017, but all of those letters went unanswered. *Id.* On July 2, 2017, Dr. Baig stopped by Plaintiff's cell and reiterated that Plaintiff would be transferred soon. *Id.* Three days later on July 5, Plaintiff wrote to Meyer and asked when he would be transferred, and Meyer told Plaintiff that he had never been submitted for a transfer. *Id.* Meyer came by Plaintiff's cell on July 14, 2017 and told him that she would submit him for a medical transfer, but told Plaintiff "don't hold your breath." (Doc. 11, p. 12). Meyer sent Plaintiff correspondence on August 9, 2017 telling Plaintiff that he was denied transfer. *Id.* Meyer later told Plaintiff that she did not put him in for a medical transfer because she could not get health care services to sign off on it. *Id.*

Plaintiff also alleges that he is exposed to unconstitutional conditions of confinement. Specifically, he alleges that he was doubled up in a cell meant for a single inmate. (Doc. 11, p. 17). He also alleges that the showers have black mold and lack handrails or ADA shower chairs, the cells are not wheelchair accessible, sinks and toilets are not wheelchair accessible, and that many of the buildings lack ADA ramps. (Doc. 11, p. 18).

Plaintiff alleges that Menard has inadequate medical staffing, which has caused medical passes to be cancelled. *Id.* Plaintiff has had to wait for medical treatment. *Id.* Plaintiff further alleges that Defendants routinely ignored medical orders and/or refused to respond to Plaintiff's request for treatment for all of Plaintiff's medical conditions and accommodations. (Doc. 11, p. 16). Wexford denied a referral to a neurologist for Plaintiff on August 9, 2017. *Id.* Plaintiff wrote an emergency grievance to Lashbrook on August 9, 2017, and followed up with two "status letters." *Id.* No response was received. *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 7 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1 –** IDOC**,** Baldwin, Bradley, Lashbrook, Lawrance, Miluer, Meyer, Rowold, Hawkins, and Walls failed to provide reasonable accommodation for Plaintiff's disability in violation of the ADA and RA;

**Count 2** – IDOC, Baldwin, Bradley, Lashbrook, Lawrance, Miluer, Hawkins, Walls, and Wexford were deliberately indifferent to Plaintiff's request for accommodation and treatment of his disabilities in violation of the Eighth Amendment;

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims do not survive threshold review.

**Count 3** – Defendants housed Plaintiff in unconstitutional conditions of confinement in violation of the Eighth Amendment;

**Count 4** – IDOC, Baldwin, Bradley, Lashbrook, Lawrance, Hawkins, Walls, Miluer, Meyer, and Rowold intentionally inflicted emotional distress upon Plaintiff in violation of Illinois state law by failing to accommodate his disability;

**Count 5** – Lashbrook, Miluer, and Meyer intentionally inflicted emotional distress against Plaintiff in violation of state law when they made untrue and misleading statements that Plaintiff would be transferred out of Menard;

**Count 6** – Lashbrook, Walls, Hawkins, and Wexford were deliberately indifferent to the nerve damage in Plaintiff's right arm/hand in violation of the Eighth Amendment;

**Count 7** – Defendants intentionally and willfully disregarded Plaintiff's disabilities in violation of the ADA and RA

As to Plaintiff's **Count 1**, the Supreme Court has held that the ADA applies to prisons. In *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998), the Supreme Court held: "State prisons fall squarely within the statutory definition of 'public entity'. . . . The text of the ADA provides no basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons." *Id.* at 210. The Court further held in *U.S. v. Georgia*, 546 U.S. 151 (2006), that an inmate may bring a private cause of action for damages pursuant to Title II of the ADA *if* the state actor's conduct also violates the Eighth

Amendment. A plaintiff's inability to establish a constitutional violation forecloses an ADA private cause of action. *See Morris v. Kingston*, 368 F. App'x 686 (7th Cir. 2010).

However, the relief available to a plaintiff under the Rehabilitation Act is coextensive. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012); *Compare* 29 U.S.C. § 794A *with* 42 U.S.C. § 12117 (both incorporating 42 U.S.C. § 2000e–5 for private right of action); *see Barnes v. Gorman*, 536 U.S. 181, 189 & n. 3, (2002). And, with respect to this lawsuit, the analysis governing each statute is the same except that the RA includes as an additional element the receipt of federal funds, which all states accept for their prisons. *See Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4,(2005); *Gratzl v. Office of Chief Judges*, 601 F.3d 674, 678 (7th Cir. 2010); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004); *Ozlowski v. Henderson*, 237 F.3d 837, 842 (7th Cir. 2001). The RA, however, does not require the same sovereign immunity analysis or an underlying constitutional violation to accord relief. *Jaros*, 684 F.3d at 672. (citing *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 639 (7th Cir. 2011) (plaintiffs may have but one recovery); *Calero–Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 11 n. 1 (1st Cir. 2004) (dismissal of ADA claim had no effect on scope of remedy because Rehabilitation Act claim remained)).

To state a claim under the ADA or RA, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability. *See* 29 U.S.C.

§ 705(2)(B); *Wis. Cmty. Serv. v. City of Milwaukee,* 465 F.3d 737, 746 (7th Cir. 2006); *Foley,* 359 F.3d at 928; *Grzan v. Charter Hosp. of Nw. Ind.,* 104 F.3d 116, 119 (7th Cir. 1997). Refusing to make reasonable accommodations is tantamount to denying access; although the RA does not expressly require accommodation, "the Supreme Court has located a duty to accommodate in the statute generally." *Wis. Cmty. Serv.,* 465 F.3d at 747; *see also Alexander v. Choate,* 469 U.S. 287, 300–01(1985). Plaintiff must plead facts which plausibly support each element of his claim. *See Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Arnett v. Webster,* 658 F.3d 742, 751–52 (7th Cir. 2011).

Here Plaintiff has alleged that he suffers from a herniated disc and spinal stenosis, and that his condition interferes with his ability to engage in daily activities. Specifically he alleges that he needs crutches to walk, and that Menard has denied him crutches in favor of providing him with a wheelchair instead. As a result of the wheelchair, Plaintiff cannot access prison programing such as education, technology resources, mental health resources, exercise, etc. on the same terms as other inmates. The Court finds that this facts state a claim pursuant to the RA and ADA, and that Plaintiff shall be permitted to proceed on this claim.

As an initial matter, however, all of the individually named defendants — Lashbrook, Lawrance, Hawkins, Walls, Miluer, Meyer, and Rowold—must be dismissed at this time. Employees of the Department of Corrections are not amenable to suit under the RA or the ADA. *Jaros v. Illinois Dept. of Corrections,*

684 F.3d 667, 670 (7th Cir. 2012); *see* 29 U.S.C. § 794(b); 42 U.S.C. § 12131; *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The only proper defendant as to this claim is the Illinois Department of Corrections. The Court notes that Plaintiff did not explicitly name IDOC in connection with this particular claim, but Plaintiff did include IDOC in his caption and statement of claim. Plaintiff also explicitly named John Baldwin, the Director of IDOC as a defendant in his official capacity and a suit against Baldwin in his official capacity is a suit against IDOC. The Court therefore finds it appropriate, as part of its duty to construe pro-se pleadings broadly, to construe the Complaint as attempting to state an ADA and RA claim against IDOC. But all of the individual defendants will be dismissed with prejudice from **Count 1**.

**Count 2,** originally Count VI, alleges that certain defendants were deliberately indifferent to Plaintiff's serious medical needs by refusing to arrange for his crutches or for a medical transfer. Prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as

mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff has alleged that he suffers from a herniated disc and severe spinal stenosis, benign prostatic hyperplasia, and high blood pressure.[1] At the pleading stages, the Court will presume that these conditions constitute a serious medical need.

Plaintiff has brought this claim against numerous Defendants. Throughout, he alleges that the defendants ignored medical orders, failed to intervene to ensure access to an assisted walking device, and failed to adequately treat his chronic medical conditions, including denying a request to see a neurologist. Regrettably, Plaintiff does not specifically identify any person who failed to take these actions. After pursuing Plaintiff's numerous exhibits, the Court has found correspondence regarding Plaintiff's issues between Plaintiff, Walls, Lashbrook, Baldwin, and Hawkins. Plaintiff also submitted correspondence to Miluer as an exhibit, but the subject of that correspondence is a transfer request, not medical care, and so it is irrelevant to the claims in Count 2. Based on the

---

[1] Plaintiff's additional claims regarding nerve damage and pain in his right arm are encompassed in Count 7.

correspondence detailing Plaintiff's medical condition to Walls, Lashbrook, Baldwin, and Hawkins, the Court finds that Plaintiff has made a plausible allegation against those individuals that they were notice of his serious medical needs and deliberately chose not to act in response to Plaintiff's complaints. Plaintiff has not made a plausible allegation that Bradley, Lawrance, or Miluer were on adequate notice of his serious medical need, and so those individuals will be dismissed without prejudice from Count 2. Should Plaintiff have additional facts tending to show that Bradley, Lawrance or Miluer were deliberately indifferent to his herniated disc, spinal stenosis, benign prostatic hyperplasia, and high blood pressure, he may submit an amended complaint.

Plaintiff has also named IDOC and Wexford as Defendants in this Count. IDOC is not a proper defendant in a claim under § 1983 because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990) (same). For that reason, IDOC will be dismissed with prejudice from this claim.

In contrast, the claim against Wexford survives. Plaintiff has alleged that there was a policy or custom of refusing to follow medical orders or secure treatment. Normally, a private corporation is shielded from vicarious liability under § 1983. However, Wexford is presumed to act under color of state law, and is thus treated as though it were a municipal entity. *Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002). To state a claim against a municipality, a plaintiff must demonstrate that the wrongdoers acted pursuant to an unconstitutional policy or custom, *Whiting v. Wexford Health Sources, Inc.,* 839 F.3d 658, 664 (7th Cir. 2016); *Shields v. Ill Dep't of Corr.,* 746 F.3d 782, 790 (7th Cir. 2014); *Perez v. Fenoglio,* 792 F.3d 768, 780 & n. 5 (7th Cir. 2015), and that the policy was the moving force behind the constitutional violation. *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)). Although Plaintiff's allegations are fairly vague, he has alleged that employees acted pursuant to a policy or custom of not following previously issued medical orders and that he was thereby harmed. **Count 2** shall therefore proceed against Wexford as well on this ground. Plaintiff has also alleged that Wexford had a policy of inadequate medical staffing at Menard and that he had medical passes cancelled as a result of staffing issues, causing him to wait for medical treatment. However, he has not explained how the delays harmed him. Without an allegation of harm, the claim fails. **Count 2** will proceed as to Wexford only on the theory that Wexford has a policy or custom

of disregarding or ignoring prior medical orders for Plaintiff's assistive walking device.

In summary, **Count 2** proceeds against Wexford, Walls, Lashbrook, Baldwin, and Hawkins. IDOC is dismissed from this count with prejudice. Bradley, Lawrance, and Miluer are dismissed without prejudice.

All of Plaintiff's other claims must be dismissed at this time. In **Count 3**, Plaintiff raises his conditions of confinement. The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results "in the denial of 'the minimal civilized measure of life's necessities,' " and (2) where prison officials are deliberately indifferent to this state of affairs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Prisons must have adequate ventilation, sanitation, bedding, and hygiene products. *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987).

Prison officials demonstrate deliberate indifference when they "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn . . . and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff has alleged that he was confined in a cell that was too small. He has also alleged that the showers were moldy, and that many of the bathroom and shower facilities lacked grab bars and were otherwise not ADA accessible. It is likely that Plaintiff has adequately alleged that, under a totality of the

circumstances analysis, he was subjected to unconstitutional conditions of confinement. However, Plaintiff made his allegations against the defendants generally. He has not identified any single defendant in connection with this claim, nor has he alleged that he told any of the named defendants about the conditions of confinement. The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. Plaintiff's allegations in this regard are deficient. **Count 3** will be dismissed without prejudice for failure to state a claim because Plaintiff has failed to allege that any specific defendant had knowledge of his conditions of confinement. Plaintiff is free to submit an amended complaint re-raising this issue.

**Count 4** is made pursuant to Illinois state law, but once again, Plaintiff has failed to state a claim. Under Illinois law, a plaintiff claiming intentional infliction of emotional distress ("IIED") must demonstrate that the defendant intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his

conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E. 2d 745, 749 (Ill. App. 1993)). Whether conduct is extreme and outrageous is judged by an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

It is doubtful that Plaintiff has adequately pleaded the first element because his allegations would apply to any wheelchair-bound inmate at Menard, and the Court is not prepared to say at this time that all such inmates have a valid IIED claim. However, even if Plaintiff did meet the first element, he has not adequately pleaded the second element. Although Plaintiff has alleged generally that Defendants have acted intentionally, Plaintiff has not alleged that he has been deprived of a walking aid in favor of a wheelchair because the defendants have intended to deprive him of services or programs. In fact, he has alleged that when he grieved this issue, he has gotten the response that the policy against assisted walking devices is for the safety and security of the institution. Plaintiff has alleged that he himself does not pose a safety and security threat, but he has acknowledged the existence of the policy. If Defendants are acting pursuant to an official policy, regardless of whether the policy itself is valid, they cannot be said

to act out of an intent to inflict harm on Plaintiff. Plaintiff has failed to state a claim in **Count 4**, and this claim will be dismissed without prejudice.

**Count 5** also fails. Plaintiff has alleged that Lashbrook, Miluer, and Meyer intentionally inflicted emotional distress by promising Plaintiff a transfer that never occurred. Plaintiff has not met the first element of the standard here. A defendant's conduct will be extreme and outrageous when it exceeds all decent bounds, that is, when civilized people would find the conduct intolerable. *Swearnigen–El v. Cook County Sheriff's Dept.,* 602 F.3d 852, 864 (7th Cir. 2010) (*quoting Kolegas v. Heftel Broad. Corp.,* 607 N.E.2d 201, 211 (Ill. 1992)); *see Fox v. Hayes,* 600 F.3d 819, 842 (7th Cir. 2010). In determining whether conduct meets the extreme and outrageous standard, courts consider three main factors: (1) the power the defendant has over the plaintiff; (2) whether the defendant had a reasonably legitimate objective; and (3) the defendant's awareness of the plaintiff's susceptibility to emotional distress. *Franciski v. Univ. of Chi. Hosp.,* 338 F.3d 765, 769 (7th Cir. 2003) (*citing McGrath v. Fahey,* 533 N.E.2d 806, 811 (Ill. 1998)). The Illinois Supreme Court has explained that conduct is extreme and outrageous when an average member of the community would exclaim "Outrageous!" upon hearing the story. *Doe v. Calumet City,* 641 N.E.2d 498, 507 (Ill.1994) (quoting Restatement (Second) of Torts § 46, cmt. D, at 73 (1965)). The tort does not cover "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (*citing McGrath v. Fahey*, 533 N.E.3d 806, 809 (Ill. 1988)).

Here, Plaintiff's allegations do not describe extreme or outrageous conduct. Plaintiff alleges that Miluer said he would submit Plaintiff for a transfer but then failed to do so. While that may have been frustrating for Plaintiff, it does not rise to the level of extreme and outrageous conduct. In the first instance, Miluer never had the authority to unilaterally transfer Plaintiff; the Illinois Administrative Code requires that all administrative transfers be reviewed and approved by the Director. 20 Ill. Adm. Code 503.120. The process also requires the involvement of a Clinical Services staff member, the Assignment Officer, and the Chief Administrative Officer. 20 Ill. Adm. Code. 503.130. At most, all Miluer could have offered to do was recommend Plaintiff for a transfer. That means that there was always a possibility that the transfer would not happen. The failure of a transfer to occur therefore is not an extreme or outrageous incident—it is a normal incident of prison life.

This conclusion is borne out by the cases that have found extreme or outrageous conduct; the common thread in those cases is that the conduct usually deprives an individual of life's necessities or involves an affront to their dignity. *See Lopez v. City of Chicago*, 464 F.3d 711, 720-21 (7th Cir. 2006) (detainee had viable IIED claim where he alleged that he was chained to a wall for 4 days and only received food and drink once during that time period); *Honaker v. Smith*, 256 F.3d 477, 492-93 (7th Cir. 2001) (setting a fire to burn someone's house down would constitute "extreme and outrageous" conduct); *Williams v. Erickson*, 962 F.Supp.2d 1038, 1043 (N.D. Ill. 2013) (inmate stated viable IIED claim where

he alleged that nurse failed to assist him in changing his colostomy bag, causing him to lay in his own feces for 4 hours).  Failing to submit a prisoner for a transfer request does not come close to the circumstances where other courts have found IIED.  The conduct is routine, not outrageous.

Plaintiff has even less of a case against Meyer.  Plaintiff concedes that Meyer actually did submit him for a transfer request, but that the transfer request was ultimately denied.  Plaintiff has not alleged that Meyer acted to get his transfer denied.  The basis of his claim appears to be that Meyer was lying when she said that she would submit him for a transfer, but Plaintiff concedes and his exhibits establish that Meyer did put him in for an administrative transfer.  Plaintiff also alleges that Meyer told him that he would be submitted for a medical transfer, then actually submitted him for an administrative transfer, and then inconsistently told him that medical would not support the medical transfer request.  Nothing in these facts establishes that Meyer's conduct was extreme or outrageous.  Again, Plaintiff may find the denial of his transfer frustrating, but as discussed above, the process was not in Meyer's complete control and the denial of transfer requests is a typical incident of prison life.  Plaintiff has not stated a claim for IIED against Meyer.

Plaintiff has also named Lashbrook in connection with this count, although the factual basis for Plaintiff's claim against Lashbrook is not clear.  Lashbrook certainly would have been involved in the transfer request because the Administrative Code requires the Chief Administrative Officer's approval, but

Plaintiff has not alleged that she deliberately denied the request to inflict emotional distress upon him. Plaintiff alleges that Miluer talked with a warden who agreed to transfer Plaintiff, but then affirmatively states that he does not know which warden Miluer was referring to. That allegation cannot be basis of liability against Lashbrook because Plaintiff has only alleged that he assumed that Miluer meant Lashbrook. Even so, because Plaintiff has not adequately stated a claim based on either of the alleged promises to transfer, the claim fails against Lashbrook as well.

The claim in **Count 7** is duplicative of the claim already pending in Case No. 17-cv-0456-DRH-RJD ("17-456"). Plaintiff filed that suit on May 2, 2017. (17-456, Doc. 5). The Court found that Plaintiff had stated a claim for deliberate indifference by ignoring Plaintiffs need for medical restraints and/or waist chains as a result of a right arm injury against Defendants Baldwin, Lashbrook, Lawrence, Hawkins, Walls, Hughes, and Meyer. (17-456, Doc. 7). Likewise, here Plaintiff is attempting to bring a claim for regarding the prison's treatment of nerve damage in his right arm and hand against Lashbrook, Walls, Hawkins, and Wexford. He specifically makes the same allegations regarding the use of box and chain sets up him present in case 17-456, and the defendants are identical. Principles of sound judicial administration prohibit Plaintiff from pursuing his claims in duplicative lawsuits, and so the Court will dismiss this count from this suit. *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817

(1976)).  The Court notes that it is possible that the allegation here may be broader than the allegation in Case No. 17-456, as Plaintiff references an August 9, 2017 grievance, but given the related nature of the claims, Plaintiff's best course of action would be to file an amended complaint in Case No. 17-456 raising the additional facts he seeks to present here.  **Count 7** will be dismissed from this case without prejudice for reasons of sound judicial administration.

Finally, **Count 8**, which was originally Count V and VIII in the Complaint will be dismissed as duplicative of Count 1.  As originally pleaded, Count V is for "Violation of the Rehabilitation Act Against Defendants IDOC, Baldwin, Bradley, Lashbrook, Lawrance, Hawkins, Walls, Miluer, Meyer, and Rowold violation of Americans with Disabilities and  Count VIII is for "failure to provide the basic necessary and reasonable accommodations [sic] for Mr. Morris ADA Disabilities Against the Defendant(s) in the above captioned case."  (Doc. 11, pp. 14,17). These legal theory are encompassed by the ADA/RA claim that the Court has ordered to proceed in Count 1.  Allowing separate claims to proceed would be duplicative, and so **Count 8** will be dismissed.

As a corollary matter, Plaintiff has named all of the defendants in their individual and official capacities.  Those individuals are not "persons" in their official capacities under § 1983 for the purposes of this suit.  Plaintiff can only bring claims against individuals that were personally involved in the deprivation of which he complains.  There is no supervisory liability in a § 1983 action; thus to be held individually liable, a defendant must be "'personally responsible for the

deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). The only time it is appropriate to name a defendant in his or her official capacity is when a plaintiff seeks injunctive relief. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). In that case, a plaintiff need not allege any specific involvement and it is irrelevant whether the party participated in the alleged violations. *Id.* (citing *Houston v. Sheahan*, 62 F.3d 902, 903 (7th Cir. 1995); *Ogden v. United States*, 758 F.2d 1168, 1177 (7th Cir. 1985)). Plaintiff has claims for injunctive relief against IDOC, John Baldwin in his official capacity as the Director of IDOC, and Lashbrook in her official capacity as Warden of Menard. To the extent that he attempts to hold any other Defendant liable based on their supervisory position, those claims are dismissed, and Plaintiff's claims against all other defendants proceed in their individual capacity only.

## Pending Motions

Plaintiff's Motion for Recruitment of Counsel and Motion to Certify Class will be referred to a United States Magistrate Judge for disposition. (Doc. 8) (Doc. 12).

Plaintiff included a motion for a TRO/Preliminary injunction with his complaint. The Court denied Plaintiff's request for a TRO on December 12, 2017, (Doc. 14) but his request for a preliminary injunction remains pending and is also referred to a United States Magistrate Judge for disposition. (Doc. 13).

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1 and 2** survive threshold review against Defendants IDOC, Baldwin, Wexford, Walls, Lashbrook and Hawkins. **Count 3** is **DISMISSED without prejudice** for failure to associate a defendant with Plaintiff's claims. **Counts 4 and 5** are **DISMISSED without prejudice** for failure to state a claim. **Counts 6 and 7** are **DISMISSED without prejudice** as duplicative. Defendants Bradley, Lawrance, Meyer, Rowold, and Miluer are **DISMISSED without prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants IDOC, Baldwin, Wexford, Walls, Lashbrook, and Hawkins: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation

of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2017.12.12
14:19:37 -06'00'

**United States District Judge**